# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,      )
    )
    )
    v.    )    Case No. 1208018377
    )
PERRY A. VENEY,     )
    )
    Defendant.    )

Submitted: January 28, 2014
Decided: April 30, 2014

Zachary Rosen, Esq.
Deputy Attorney General
Delaware Department of Justice
820 N. French Street, 7ᵗʰ Floor
Wilmington, DE 19801
 *Attorney for the State*

James A. Natalie, Jr., Esq.
Woloshin, Lynch, Natalie
 & Gagne, P.A.
3200 Concord Pike
Wilmington, DE 19803-7329
 *Attorney for Defendant*

## MEMORANDUM OPINION AND ORDER
## ON DEFENDANT'S MOTION TO SUPPRESS

On August 22, 2012, Defendant Perry Veney (hereinafter "Defendant") was arrested and charged with the following offenses: (1) Driving Under the Influence of Drugs in violation of 21 *Del. C.* § 4177(a)(2); (2) Failure to Signal in violation of 21 *Del. C.* §4155(a); (3) Driving off the Roadway or Main Travel Lanes in violation of 21 *Del. C.* § 4117(a); (4) Driving a Vehicle at an Unsafe speed in violation of 21 *Del. C.* §

4168(a); (5) Reckless Driving in violation of 21 *Del. C.* § 4175(a); and (6) Aggressive Driving in violation of 21 *Del. C.* § 4175A. Prior to trial, Defendant filed a motion to suppress the results of a blood test on the basis that he is shielded from conviction under the Delaware Medical Marijuana Act (hereinafter "DMMA"), and the arresting officer lacked probable cause for the arrest and seizure of blood. After a review of the submitted briefs and applicable law, the Court **DENIES** Defendant's motion to suppress.

## FACTS

On August 27, 2012, Trooper Patrick Wenk (hereinafter "Trooper Wenk") of the Delaware State Police was traveling east on Old Baltimore Pike in a marked patrol vehicle. Trooper Wenk observed Defendant travel directly behind another vehicle, then enter the wide right shoulder, accelerate, and pass the vehicle in front of him at a rate of speed above the posted speed limit of 45 miles per hour. After passing the vehicle, Defendant returned his vehicle to the eastbound travel lane. Trooper Wenk then passed the slower-moving vehicle, and followed Defendant as he turned into a neighborhood. Trooper Wenk activated his vehicle's emergency lights. Defendant slowed, activated his right turn signal, and stopped on the right side of the road.

Trooper Wenk approached Defendant's vehicle, and observed Defendant slouched in the driver's seat with the seat reclined. Defendant was not wearing his seatbelt, and Trooper Wenk detected a very strong odor of marijuana emanating from

2

the Defendant and his vehicle.[1] Trooper Wenk also observed ash on Defendant's shoulder and particles of a leafy green substance on Defendant's shirt.[2]

Trooper Wenk questioned Defendant, who acknowledged that he should not have sped past the other motorist, but that he was "trying to hurry up and get home." When questioned about the marijuana odor, Defendant stated that there was no marijuana in the car, but that he smoked in the vehicle "earlier," on his way to Delaware from New Jersey. Defendant stated that he smoked a joint while driving the car, and that he had finished it "hours ago."[3] In his report, Trooper Wenk noted that Defendant appeared sleepy, his speech was "mumbled/fair," and Defendant was polite and cooperative.[4] A pat-down search revealed $2,000 in cash in Defendant's pockets.

Trooper Wenk asked Defendant to perform a variety of tests, including the alphabet test, the counting test, the walk and turn test, one-leg stand test, a horizontal gaze nystagmus (hereinafter "HGN") test, and a portable breathalyzer test (hereinafter "PBT"). Prior to administering the tests, Defendant advised Trooper Wenk that he had no physical defects, and that he understood and felt comfortable with the field tests. Defendant performed the alphabet test correctly. On the counting test, Trooper Wenk told Defendant to start at 68 and count backwards to 53. Defendant

---

[1] Trooper Wenk noted in his Impaired Driving Report that he "could actually begin to detect the odor of marijuana as [he] approached the suspect vehicle on foot for the first time."
[2] According to the Impaired Driving Report at page 3, the particles later tested positive for marijuana.
[3] Trooper Wenk noted that Defendant had only been driving for 1-2 hours when he was stopped.
[4] Impaired Driving Report at p. 3.

performed as he was told, but stopped at 50 rather than 53, and told Trooper Wenk that he "[could] keep going, [he] just [didn't] remember what [Trooper Wenk] said."[5] On the walk and turn test, Defendant broke stance during the instructional stage and held his arms awkwardly in front of his body, but was able to take 10 steps. Prior to turning, Defendant raised his arms and stepped off the imaginary line. Defendant then took 9 steps while holding his arms awkwardly in front of his body. Trooper Wenk stated in his report that he observed six of eight clues of impairment on this test. On the one-leg stand test, Defendant swayed twice and raised his arms three times. Finally, Defendant passed both the HGN test and PBT.

## **PARTIES' CONTENTIONS**

Defendant alleges that he is protected from conviction under the DMMA.[6] The DMMA seeks to protect individuals with debilitating illnesses from arrest and prosecution as a result of engaging in the use of marijuana for medicinal purposes.[7]

However, the DMMA only protects individuals who have registered with the state and are considered registered qualifying patients.[8] Defendant alleges that he qualifies as a visiting qualifying patient,[9] and therefore, under 16 *Del. C.* § 4904A(4), he

---

[5] *Id.*
[6] 16 *Del. C.* §§ 4901A-26A.
[7] 16 *Del. C.* § 4901A(g).
[8] 16 *Del. C.* § 4903A(a). A "qualifying patient" is an individual "who has been diagnosed by a physician as having a debilitating medical condition." 16 *Del. C.* § 4902A(11).
[9] "'Visiting qualifying patient' means a person who: a. Has been diagnosed with a debilitating medical condition; b. Possesses a valid registry identification card…that was issued pursuant to the laws of another state…that allows the person to use marijuana for medical purposes in the jurisdiction of issuance; and c. Is not a resident of Delaware or who

4

is protected from the imposition of civil and criminal penalties for "operating, navigating, or being in actual physical control of any motor vehicle…under the influence of marijuana" if the sole indication of being under the influence is the "presence of metabolites or components of marijuana."[10]

Defendant alleges that Trooper Wenk did not have probable cause to arrest Defendant, and therefore Defendant is protected from conviction under the DMMA because he could not be considered "under the influence" solely due to the presence of metabolites or components of marijuana. Defendant argues that the results of the field sobriety tests, the odor of marijuana, and the traffic violation, did not give rise to the requisite probable cause for an arrest. Defendant relies upon three cases in which Delaware courts found probable cause, _Bease v. State_,[11] _Lefebvre v. State_,[12] and _Perrera v. State_,[13] to prove that because the same factors were not present in this matter, probable cause did not exist. Defendant also argues that because he was cooperative, polite, and complied with Trooper Wenk's requests, probable cause did not exist.

Defendant cites to the Michigan Supreme Court decision in _People v. Koon_, in which that court held that driving under the influence of marijuana requires more than the existence of marijuana in an individual's system, and "requires some effect on

---

has been a resident of Delaware for less than 30 days." 16 _Del. C._ § 4904A(18). Defendant alleges that he meets all requirements because he has been diagnosed with a medical condition; he possesses a valid registry identification card; and he was not a resident of Delaware when he was arrested.

[10] 16 _Del. C._ § 4904A(4).
[11] 884 A.2d 495 (Del. 2005).
[12] 19 A.3d 287 (Del. 2011).
[13] 852 A.2d 908 (Table) (Del. 2004).

5

the person."[14]  Defendant alleges that although he admitted to using marijuana, committed a traffic violation, and Trooper Wenk detected the odor of marijuana in his vehicle, Trooper Wenk possessed no evidence of impairment which would create the necessary probable cause for an arrest.  Defendant argues that he is protected from prosecution under the DMMA, and requests that the Court suppress the results of the blood test.

The State alleges that even if Defendant could protect himself under the DMMA as related to 16 *Del. C.* § 4904A(4), Defendant has no protection under the DMMA for his violation of § 4904(3), which states, "This chapter does not authorize any person to engage in, and does not prevent the imposition of any civil, criminal, or other penalties for engaging in … (3) Smoking marijuana: a. In any form of transportation." The State notes that Defendant admitted to smoking marijuana while driving a car, and therefore he is not protected by the DMMA.

With respect to the probable cause issue, the State argues that, under the totality of the circumstances, probable cause did exist for Trooper Wenk to arrest Defendant.  The State argues that Defendant's traffic violations, coupled with the discovery of both smoked and unsmoked marijuana, Defendant's admission to smoking while driving, and his performances on the counting test, walk and turn test, and one leg stand, all  when considered, under the totality of the circumstances, there existed a fair probability that Defendant committed a crime.

---

[14] *People v. Koon*, 832 N.W.2d 724, 726 (Mich. 2013).

6

The State also alleges that Defendant's argument that probable cause did not exist because factors present in *Bease*, *Lefebvre*, and *Perrera* were not present in his arrest, is baseless. The State argues that "more than three sets of circumstances" are "sufficient under Delaware law to establish probable cause," and that Defendant failed to provide case law proving that the factors present in this matter are insufficient to form the basis of probable cause. The State moved the Court to deny Defendant's motion to suppress.

## ANALYSIS

In a motion to suppress, the State must establish probable cause by a preponderance of the evidence.[15] "No precise formula exists for determining probable cause. Instead, Delaware courts have defined and refined, through a variety of factual contexts, the boundaries of what constitutes probable cause for a DUI offense."[16] The Court must give specific weight to each factor considered within the totality of the circumstances and determine if such factors suggest, when viewed by a reasonable police officer, that "that there is a fair probability that the defendant committed the offense."[17]

In *State v. Flonnery*, the Superior Court found that the following factors were sufficient to support a finding of probable cause: 1) traffic violation; 2) bloodshot, glassy eyes; 3) 2/3 full beer bottle in the driver's side door; 4) odor of alcohol; 5)

---

[15] *Bease*, 884 A.2d at 498; *State v. Mulholland*, 2013 WL 3131642, at *3 (Del. Com. Pl. June 14, 2013).
[16] *State v. Lanouette*, 2012 WL 4857820 (Del. Com. Pl. Aug. 27, 2012) (citations omitted).
[17] *Miller v. State*, 4 A.3d 371 (Del. 2010).

7

defendant's admission to drinking; and 6) failed field tests and a failed PBT. The Court determined that probable cause existed even though the defendant was cooperative, sat normally in the vehicle, did not slur his words, and promptly provided his documents, as "such evidence does not automatically defeat probable cause,"[18] and must be weighed along with evidence of impairment when determining whether probable cause existed.[19]

Similarly, in *State v. Lanouette*, this Court found that probable cause existed after consideration of the following factors: 1) traffic violation; 2) bloodshot, glassy eyes; 3) odor of alcohol; 4) admission to drinking; and 5) failed field tests and HGN test. While the defendant in Lanouette did pass one field test, had clear speech, and was cooperative, the Court nonetheless determined that probable cause existed for his arrest.[20]

Defendant cited to *Bease v. State* in his argument against a finding of probable cause, as the factors present in his arrest did not match the factors present in the *Bease* case. In *Bease*, the Superior Court determined that the following factors were sufficient to establish probable cause: 1) abrupt vehicular movement; 2) odor of alcohol; 3) bloodshot, glassy eyes; 4) admission to drinking; 5) rapid speech; and 6) his inability to produce his driver's license.[21] Delaware courts do not decide whether probable cause existed by relying upon a single case to compare factors present in a

---

[18] 2013 WL 3327526, at *4 (Del. Super. June 12, 2013).
[19] *Id.*
[20] 212 WL 4857820, at *9 (Del. Com. Pl. Aug. 27, 2012).
[21] 884 A.2d at 498.

8

totality of the circumstances situation. Instead, the courts compare decisions to all factors and circumstances of individual cases to determine whether probable cause existed.[22]

Here, Defendant committed multiple traffic violations prior to Trooper Wenk pulling him over. Once Trooper Wenk made contact with Defendant, he observed a strong odor of marijuana, ash on Defendant's shoulder and a leafy green substance on his shirt, and Defendant admitted to smoking a joint approximately one to two hours prior to his contact with Trooper Wenk. Trooper Wenk noted that Defendant appeared sleepy, his seat was reclined, and he was slouched in the seat. Trooper Wenk also stated that Defendant was polite and cooperative during their contact, that Defendant passed the alphabet test, displayed zero total clues on the HGN test, and followed nearly all directions on the counting test. However, Defendant's performance on the walk and turn and one leg stand tests demonstrated that he may be impaired.

The Court finds that the aforementioned factors do support a finding of probable cause for arrest in this matter. Defendant, like the defendants in the cited case law, committed traffic violations, which led to contact with Trooper Wenk. Trooper Wenk detected the odor of marijuana, saw remnants of marijuana on Defendant's shoulder and shirt, and Defendant expressly admitted to smoking a joint

---

[22] *Lanouette*, 212 WL 4857820, at *8.

9

while driving the vehicle.[23]  This admission would thus allow for the imposition of penalties under 16 *Del. C.* § 4904A(3), which prohibits smoking marijuana in "any form of transportation," regardless of any protections provided by the DMMA. Defendant here, like the defendants in *Flonnery* and *Lanouette*, also failed multiple field tests.  Trooper Wenk also noted that Defendant's position in the vehicle, slouched down and reclined, was suspicious, and that Defendant appeared sleepy during the contact.[24]  The Court does consider Defendant's cooperative and polite demeanor throughout his interaction with Trooper Wenk, and also took into account his completed field tests.  These factors however, when were weighed along with the factors does not prevent the Court from finding probable cause.

Defendant argued that the results of his blood draw must be suppressed because he cannot be "considered… under the influence of marijuana solely because of the presence of metabolites or components of marijuana."[25]  Defendant also argued that his demeanor and completed field tests negated any basis for probable cause of his arrest.  The Court finds that these arguments do not overcome the other factors present in this matter that support probable cause for the arrest.  Defendant was aware that he was prohibited from smoking marijuana while driving a vehicle,

---

[23] In Defendant's motion, he attached his certification for the medical use of marijuana.  The certification expressly states, "My patient has been informed that cannabis can affect the judgment and reaction time and not to operate motor vehicles…while using it."

[24] Defendant raised the argument that the sleepiness arose from the time of the contact, which was around 2 a.m. However, the State does not need to prove that Defendant's sleepy demeanor was directly caused by his marijuana consumption, but only that a reasonable officer could find sleepiness to be an indicator of impairment enough to consider it a factor in the totality of the circumstances/probable cause analysis.  *See Miller*, 4 A.3d at 371.

[25] 16 Del. C. § 4904A(4).

under the act. With the presence of remnants of marijuana on his person and the admission of smoking, the DMMA affords no protection for the defendant.

Accordingly, **IT IS HEREBY ORDERED this 30th day of April 2014**, that Defendant's motion to suppress, is **DENIED**.

_____

The Honorable Alex J. Smalls
Chief Judge

Veney-OP  April 2014

11